**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JAMES H. ROBINSON,**

      **Petitioner,**

**vs.**

                                        **CASE NO. 4:05cv156-RH/WCS**

**JAMES McDONOUGH,[1]**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by James H. Robinson pursuant to 28 U.S.C. § 2254.  Doc. 1.  Petitioner challenges his conviction for burglary of a dwelling (count one), dealing in stolen property (count two), grand theft (count three), resisting arrest without violence (count four), trespass to an occupied structure (count five), and possession of drug paraphernalia (count six).  The convictions were in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 01-751-AF.

---

[1] James McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  FED. R. CIV. P. 25(d).

Respondent filed an answer, doc. 8, and Petitioner filed a traverse, doc. 9.

Respondent concedes that the petition was timely filed.  Doc. 8, p. 4.

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have

exhausted their claims in state court.  28 U.S.C. §§ 2254(b)(1), (c)."  O'Sullivan v.

Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).  To properly

exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented

to the state courts."  Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d

438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865

(1995) (*citing* Picard).

If a claim was not fairly presented but is procedurally barred from further state

court review,[2] Petitioner must demonstrate cause for the default and actual prejudice, *or*

demonstrate that the constitutional violation has probably resulted in conviction of an

innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115

L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-

71, 113 L.Ed.2d 517 (1991).

For claims which were properly exhausted and adjudicated in state court, this

court's review is limited.  "[A] determination of a factual issue made by a State court

shall be presumed to be correct," and Petitioner has "the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1);

---

[2] Procedurally defaulted claims are considered technically exhausted because state court remedies no longer remain "available."  The court therefore refers to "fairly presented" claims as having been *properly* exhausted, to distinguish them from claims exhausted by procedural default.  *See* O'Sullivan, 526 U.S. at 848, 119 S.Ct. at 1734.

Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted).

Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that

the adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is

satisfied "only if it is shown by clear and convincing evidence that the state court's

presumptively correct factual findings do not enjoy support in the record."  Lomholt v.

Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state

court's adjudication of the merits of the federal claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States." § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meanings. Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495,

1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843,

1850, 152 L.Ed.2d 914 (2002) (citing Williams).  "[C]learly established Federal law, as

determined by the Supreme Court of the United States," refers only to holdings of the

Supreme Court, but decisions of lower federal courts may be considered to the extent

that they demonstrate how those courts applied Supreme Court  precedent.  Hawkins v.

Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by [the
> Supreme] Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas court may

grant the writ if the state court identifies the correct governing legal
principle from this Court's decisions but unreasonably applies that
principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly

established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066,

2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520;

Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland,

Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or

omissions of counsel that are alleged not to have been the result of reasonable

professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim,

"counsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."  466 U.S. at

690, 104 S.Ct. at 2066.  Petitioner has a heavy burden to establish the deficient

performance prong of Strickland, by showing that "no competent counsel would have

taken the action that his counsel did take."  Fugate v. Head, 261 F.3d 1206, 1217 (11th

Cir. 2001) (citation omitted).

For prejudice, Petitioner must show "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the

outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

Although Strickland explained the performance and prejudice prongs of analysis,

"there is no reason . . . to approach the inquiry in the same order or even to address

both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

If the state court identifies and applies the framework of Strickland in assessing an ineffective assistance claim, its adjudication does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Petitioner contends that his attorney was ineffective for failing to object to a portion of the instruction on burglary.  The information alleged in count one that Petitioner "did unlawfully enter or remain in a structure . . . with intent to commit the offense of theft or some offense therein, contrary to Section 810.02(3), Florida Statutes."  Doc. 8, Ex. A, R. 1.  The trial court instructed the jury that to prove count one, the state had to prove that without permission of the owner, Petitioner "entered *or*

*remained in* a structure . . . ."  Doc. 8, Ex. C, p 216 (trial transcript).  The court also instructed that:  "Even though an unlawful entering or remaining in a structure is proved, if the evidence does not establish that it was done with the intent to commit theft or some offense therein, the defendant must be found not guilty."  *Id.*, p. 217.  Petitioner's attorney made no objection to these standard instructions.  The verdict form was a general verdict as to count one.  Doc. 8, Ex. A, R. 14.

Petitioner contends that under Florida law, the instruction as to "remaining" in a building is proper only if there was evidence that he remained "surreptitiously."  He argues that there was no evidence that he remained on the premises surreptitiously, and that his attorney should have objected to this jury instruction because it lacked that qualifier.

The basis for this claim is Delgado v. State, 776 So. 2d 233 (Fla. 2000).  In Delgado, the Florida Supreme Court abrogated a long line of decisions, holding that "the 'remaining in' language [of this standard jury instruction] applies only in situations where the remaining in was done surreptitiously."  776 So.2d at 240.  The Court said that its opinion would not "apply retroactively to convictions that have become final."  776 So. 2d at 241 (*revised opinion*, August 24, 2000).  Delgado had been issued when Petitioner committed his offenses in 2001.

Petitioner presented a different claim in his Rule 3.850 motion.  He argued there that his counsel was ineffective for failing to object to the portion of the jury instruction that permitted conviction for "remaining in" the building.  Doc. 8, N, R. 108.  He argued: "These instructions are fundamentally flawed because, the facts here demonstrate that entry was without permission."  *Id.*  He noted that the victim of the offense arrived home

and found that her stereo and VCR were missing.  *Id.*, R. 106.  Petitioner was found in a

nearby backyard, hiding in a shed, and the stereo was found in that backyard.  *Id*.

Petitioner's defense was that he bought the stolen items from "Red," and that he did not

commit the burglary.  *Id.*, R. 107.  Petitioner did not cite <u>Delgado</u>, but relied instead

upon <u>Lopez v. State</u>, 805 So. 2d 41 (Fla. 4th DCA 2001).

On appeal from denial of the Rule 3.850 motion, however, Petitioner shifted the

focus of the claim, citing <u>Delgado</u> for the argument that it was error to instruct the jury as

to "remaining in" the structure where there was no evidence of "surreptitious remaining."

Doc. 8, Ex. S.

Respondent concedes exhaustion of state court remedies, however.  Doc. 8, p.

6.  This examination of Petitioner's state post-conviction litigation history is provided to

explain why the state circuit court did not refer to <u>Delgado</u> when it denied Petitioner's

Rule 3.850 claim.

The state circuit court denied the claim, finding:

Defendant's Ground 1 claims counsel was ineffective for failing to object to
an allegedly improper jury instruction. Specifically, Defendant claims that
the instruction given at trial allowed the jury to convict the Defendant if he
found that he formed the intent to commit an offense after entry. The
Defendant cites *Lopez v. State*, 805 So. 2d 41 (Fla. 4th DCA 2001) in
support of his claim.

Defendant's counsel was not ineffective for two reasons.  First, the Fourth
District Court of Appeal receded from *Lopez* in *Roberson v. State*, 841 So.
2d 490 (Fla. 4th DCA 2003).  The court acknowledges that while the
instruction may have been prejudicial in some cases, it is not in others
because it is not inherently prejudicial.  When applied to the facts of this
case, the instruction is not prejudicial as the evidence presented at trial
pointed to the "breaking and entering" alternative with no evidence that the
Defendant ever had any permission to enter the dwelling.  *See* Attached
Trial Trans.; *Roberson* at 492.  "Where the evidence points clearly to the
alternative that would allow the jury properly to presume the requisite

intent, it is not reasonable to suppose the jury was misled by the inclusion of the instruction as to the 'remaining in' alternative." *Id.* at 493.  Second, the case law of *Lopez* was final after rehearing was denied on February 7, 2002.  The trial in this case took place on February 1, 2002.  Therefore, Lopez announced a new rule after the trial in this case took place, and the standard jury instructions referencing "enter or remain" have been in place and read for years and years without issue.  Accordingly, trial counsel could not reasonably anticipate this change in the law.  Furthermore, the issue of fundamental error, such as that raised in *Lopez*, can be raised for the first time on appeal.  As such, the failure of trial counsel to object to preserve error is not prejudicial. The matter could have and should have been raised on appeal.

Doc. 8, Ex. O, R. 118.  As to the last point, "[j]ury instructions are subject to the contemporaneous objection rule and absent objection at trial, can be raised on appeal only if fundamental error occurred."  Moore v. State, 903 So. 2d 341, 343 (Fla. 1st DCA 2005).

Florida law underlying Petitioner's claim is in turmoil, as explained in document 8, footnote 3.  Petitioner's offenses occurred on February 26, 2001.  Doc. 8, Ex. A.  Petitioner's trial commenced on February 1, 2002.  Doc. 8, Ex. C, p. 1 (trial transcript).  The Florida Legislature "nullified" Delgado by enactment of Chapter 2001-58, § 1, Laws of Florida, and made this statute retroactive to February 1, 2000.  The amendment took effect on May 25, 2001.  Foster v. State, 861 So. 2d 434, 438 (Fla. 1st DCA 2003) (order granting clarification), *review denied*, 880 So. 2d 1212 (Fla. 2004), citing Chapter 2001-58.  Thus, the new law became effective after Petitioner committed his offenses but before his trial, and was to be retroactive to a date earlier than the date Petitioner committed his offenses.

In Foster, the burglary had been committed on April 22, 2000.  861 So. 2d at 435.  There was conflicting evidence in Foster as to whether the defendant there had had

permission to enter the convenience store where the theft took place.  The manager of the store, who normally kept the store locked and did business through a safety window, had gone to the police station to report what appeared to be an active breaking and entering by means of removal of an air conditioner.  861 So. 2d at 435.  Petitioner gave a contrary version in his testimony, however.  He said that after the manager left, he entered the store through an open door to buy cigarettes and had no intention of committing a crime in the store when he entered it.  *Id.*

The clarifying opinion rendered in Foster was not final until December 24, 2003, several months after the state circuit court denied Petitioner's Rule 3.850 motion.[3] Foster held that Delgado applied to the case despite the intervening legislative action.[4] Foster also held that Chapter 2001-58, § 1, Laws of Florida, did not apply, reasoning: "The Legislature was powerless to alter the chronology of these historical facts or to blink their constitutional significance."  861 So. 2d at 441.

The Florida Legislature next enacted Chapter 2004-93, § 1, Laws of Florida, effective May 21, 2004, amending FLA. STAT. § 810.015 even further.  Among the other matters set forth in this statute, the Legislature said that:  "The February 1, 2000, date reflected in subsection (2) [the retroactive date of the statute enacted to be effective on May 25, 2001] does not refer to an arbitrary date relating to the date offenses were committed, but to a date before which the law relating to burglary was untainted by

_____

[3] The denial of the Rule 3.850 motion was on October 31, 2003.

[4] The court in Foster said:  "The change wrought by *Delgado* took effect (both prospectively and, as to pipeline cases, retrospectively) when the final opinion in *Delgado* came down, after the burglary alleged in the present case transpired, but before trial."  861 So. 2d at 436, n. 1.

*Delgado v. State*, 776 So. 2d 233 (Fla. 2000)."[5]  The Legislature further said that it was

its intent to restore the law of burglary as if Delgado "was never issued," and to give

Delgado "and its progeny, no effect."  *Id.*

When Respondent filed the answer in the case at bar, the Florida Supreme Court

had not again addressed the issue of the vitality of the Delgado, or for what period of

time that case might still apply.  Doc. 8, p. 6 n. 3.  I cannot find any additional cases

discussing the continuing validity of either Delgado or Foster.  Respondent, however,

concedes that, at least in this district, the state is bound by the ruling in Foster, and thus

assumes that the rule of Delgado applies to Petitioner's case.  *Id.*

> Foster held that:

> A conviction that rests on alternative bases, one of which is *legally*
> inadequate, cannot be upheld, if a general verdict makes it impossible to
> say with certainty that the jury convicted under a theory that was legally
> sufficient.

Foster v. State, 861 So. 2d 434, 437 (Fla. 1st DCA 2003) (order granting clarification)

(emphasis added, citation omitted), *review denied*, 880 So. 2d 1212 (Fla. 2004).  As

noted above, there was evidence in Foster from which a jury might have concluded that

the defendant entered the convenience store with permission as a business invitee,

though there was also evidence that he entered unlawfully.  The problem in Foster,

therefore, was not factual.  There was evidence to support a conviction for burglary

either by unlawful entry or unlawfully remaining, assuming that the remaining did not

need to have been done surreptitiously.  However, since surreptitious remaining was

---

[5] In face, however, the original opinion in Delgado, 2000 WL 124382, was
entered on February 3, 2000.  It was superseded by the published opinion (on grant of
rehearing) on August 24, 2000.

legally required (since Delgado was found to still govern), the court found that one of the

bases for the conviction was *legally* inadequate.

This distinction was relied upon by the state circuit when it denied Petitioner's

Rule 3.850 motion, though Foster had not yet been decided on rehearing.  The trial

court cited Roberson v. State, 841 So. 2d 490 (Fla. 4th DCA) (*en banc*), *review denied*,

848 So. 2d 1155 (Fla. 2003), receding from Lopez v. State, 805 So. 2d 41 (Fla. 4th DCA

2001), *review denied*, 828 So. 2d 389 (Fla. 2002).  Roberson held that the inclusion of

the "remaining in" portion of the burglary jury instruction was "not inherently prejudicial;

it may be in some case, but not in others."  *Id.*, at 492.  Roberson quoted Reed v. State,

837 So. 2d 366 (Fla. 2002), for the rule "that an error is fundamental only when it

'reach[es] down into the validity of the trial itself to the extent that a verdict of guilty

could not have been obtained without the assistance of the alleged error.' " 841 So. 2d

at 392, citing 837 So. 2d at 370.  " '[T]o meet this standard, it must follow that the error

prejudiced the defendant.' "  *Id.*  Roberson then held that where, as in that case, "there

is simply no basis for the intruder to be in the premises," the inclusion of the "remaining

in" portion of the jury instruction is not fundamental error.  841 So. 2d at 492-494.

The ruling in Roberson is consistent with Florida Supreme Court precedent.  In

Fitzpatrick v. State, 859 So. 2d 486 (Fla. 2003), the court said that "[i]t is well

established that a general jury verdict cannot stand where one of the theories of

prosecution is legally inadequate."  859 So. 2d at 490, relying upon Yates v. United

States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).  But citing Griffin v. United

States, 502 U.S. 46, 60, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), the court also noted

that the rule of <u>Yates</u> does not apply to "*factually* inadequate theories."  859 So. 2d at

490 (emphasis added by the court).

This distinction was applied in <u>Monlyn v. State</u>, 894 So. 2d 832 (Fla. 2004).  In

that case, the defendant argued that "because a general verdict form was used, there is

no way to determine on which theory the jury based its verdict, and that the robbery

basis is invalid because there is insufficient evidence to support it."  894 So. 2d at 837.

In other words, the claim was that there was a "*factual* or *evidentiary* insufficiency" of

the general verdict, not a legal insufficiency.  *Id.* (emphasis by the court).  The court

held that since there was evidence supportive of a robbery based upon theft of a wallet,

theft of a truck, or both, all of which were legally adequate grounds for conviction,

reversal was not required.  *Id.*

In summary, even if <u>Delgado</u> is applicable to Petitioner's case, prejudice to the

outcome has not been shown.  As Petitioner admits and the circuit court found that

there was no evidence that Petitioner had permission to enter the residence of the

victim.  Since there was plainly no factual basis for a finding of burglary by remaining in

the premises, it does not matter that the "remaining in" language was not qualified by

the word "surreptitiously."  Therefore, the state court's adjudication of the merits of this

federal claim has not "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  § 2254(d)(1).

**Ground Two**

Petitioner contends his attorney was ineffective as to advice concerning a plea

offer or as to the potential sentence that might be imposed.  Petitioner argues that the

prosecution offered him a six year prison sentence in exchange for a guilty plea.  He

asserts that his attorney erroneously told him that a six year sentence would be without

the benefit of gain time, and that if he went to trial, the maximum sentence would be 11

years.  Petitioner asserts that he would have entered a guilty plea and accepted the

plea offer had he received correct legal advice.

The same claim was presented by means of the Rule 3.850 motion (ground four

there) and the circuit court held an evidentiary hearing.  Doc. 8, Ex. N, R. 112-113; Ex.

P.  The claim was denied.  *Id.*, Exs. P, Q.  After hearing the evidence, the trial court

found Petitioner's claims to be not credible and lacking in supporting evidence.  *Id.*, Ex.

P, pp. 41-43.

Although he had an attorney, Petitioner did not appeal this aspect of the denial of

his Rule 3.850 motion.  *Id.*, Ex. S, T.  Respondent asserts that the claim is procedurally

barred for this reason.  Doc. 8, p. 16.

The "one complete round" exhaustion requirement set forth in O'Sullivan v.

Boerckel, *supra*, applies to post-conviction review as well, and a prisoner must appeal

the denial of post-conviction relief in order to properly exhaust state remedies.  Leonard

v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979) (Florida prisoner must appeal denial of

Fla.R.Crim.P. 3.850 relief to exhaust remedies); LeCroy v. Secretary, Florida Dept. of

Corrections, 421 F.3d 1237, 1261 (11th Cir. 2005), *cert. denied*, 126 S.Ct. 1458 (2006)

(as Florida prisoner failed to properly exhaust claim on direct appeal or Rule 3.850

appeal, it was procedurally barred, citing Coleman); Pope v. Rich, 358 F.3d 852, 854

(11th Cir. 2004) ("Boerckel applies to the state collateral review process as well as the

direct appeal process").

Petitioner has not shown cause for his procedural default or prejudice to the outcome.  Further, he has not rebutted the presumption of correctness of the state court's factual findings from the evidentiary hearing "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Consequently, the court cannot reach the merits of ground two.

**Ground Three**

Petitioner asserts that his trial attorney was ineffective because he failed to object to evidence introduced at trial "despite the trial court's holding that such evidence would be excluded."  The evidence at issue was the testimony of Tara Bartee, relevant to count three, the grand theft charge, that her home had been "burglarized."  Respondent concedes exhaustion of state court remedies as to this claim.  Doc. 8, p. 17.

Petitioner was charged in count one with burglary of the home of Shelia [sic[6]] Moore and in count three with grand theft from Tara Bartee.  Doc. 8, Ex. A, R. 1.  Petitioner made the same claim in his Rule 3.850 motion.  *Id.*, Ex. N, R. 111.  In denying this claim, the state court said:

> The Defendant's claim deals with the fact that he was charged with grand theft for being in possession of stolen property owned by Tara Bartee (Count 3), but he was not charged with the actual stealing or burglary that resulted in his being in possession of the stolen property.  *The Defendant claims that the testimony of the victim stating the Defendant did not have her permission to have the property led the jury to the conclusion that the Defendant committed burglaries that he was not charged with.*  As evidenced by the attached transcripts, Defendant's counsel did raise this issue with the Court *and the Court overruled the objection.*  (See trial trans. pgs. 8-9).  Accordingly, counsel did raise this matter with the Court and the Defendant cannot show ineffective assistance of counsel.

---

[6] The victim's name is spelled Sheila Moore in the trial transcript.  Doc. 8, Ex. C, pp. 3, 82.

> Furthermore, review of the trial testimony of the victim in this count shows
> nothing prejudicial or improper was raised leading to the automatic
> conclusion that the Defendant robbed the house to later be in possession
> of the stolen items.  The transcript also shows Defendant's counsel
> effectively cross examined the witness on this issue.  (See trial trans. pgs.
> 111-118).

Doc. 8, Ex. O, R. 120 (emphasis added).

The finding that the trial court overruled Petitioner's objection is not supported by

the record.  The trial court granted Petitioner's objection.  Before trial commenced,

Petitioner's trial attorney, Lilja Dandelake, moved *in limine* to exclude testimony

"regarding other burglaries that my client may have been a suspect in . . . ."  Doc. 8, Ex.

A (transcript), p. 7.  She argued that it was permissible to elicit testimony that Petitioner

did not have Bartee's permission to have possession of her property, but asked that any

mention of a burglary as to Bartee be excluded.  *Id.*, p. 8.  The court agreed that

testimony that the property had been stolen was admissible, but held that "as to other

burglaries or investigations on other burglaries, or anything of that nature, I agree, that

should not be coming in."  *Id.*, p. 9.  The trial court's finding that it had overruled the

objection is "an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  § 2254(d)(2).

Further, despite the trial court's ruling prior to trial, that is not the way the

testimony ran at trial.  Tara Bartee was asked by the prosecutor "what happened," and

she said: "I was burgled.  Someone apparently entered my home and took my VCR, a

stereo, and some checks."  *Id.*, p. 112.  Petitioner's attorney made no objection.  *Id.*

The prosecutor emphasized the burglary again by asking about Bartee's report to law

enforcement that items "had been taken from your house?"  *Id.*, p. 114.  The prosecutor

asked whether a door had been broken or windows busted, and Bartee said she left a window open for her cat.  *Id.*  Later, Bartee identified items that had been "taken from my desk in my home."  *Id.*, p. 115.  Again, the prosecutor asked Bartee to identify items "taken from your home."  *Id.*, p. 115.  In short, despite the trial court's ruling, there was no attempt by the prosecutor to avoid a description of a burglary of Bartee's home. Petitioner's attorney did not object to any of this testimony.  On cross examination, Petitioner's attorney established that Bartee did not "personally witness who burglarized your house," and had no idea who was responsible.  *Id.*, p. 118.

The trial court also misapprehended Petitioner's claim.  Petitioner complained about testimony that he had committed a *burglary* of Bartee's home, not that Bartee would be allowed to testify that Petitioner did not have permission to have possession of her property.  *Id.*, Ex. N, R. 111.

Since the state court misapprehended Petitioner's claim and the record, this court should consider the ineffective assistance claim *de novo*.  The claim fails on the merits. To prove grand theft, the prosecution had to establish that Petitioner had no permission from Bartee to have possession of her property.  It also had to show that the property had been stolen from Bartee.  The circumstances of that theft, that the property had been taken from Bartee's residence, necessarily had to be explored.  Bartee, of course, could have simply testified that the property had been taken from her home without her permission, and could have refrained from describing this as a burglary, but the jury still would have reasoned that property does not leave someone's home, in the normal course of events, without someone committing a burglary.

Further, Bartee's testimony that the event a "burglary" was permissible under Florida evidence law because the burglary of the Bartee residence was inseparable from the grand theft charge:

> Thus, evidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is not *Williams*[7] rule evidence.  It is admissible under section 90.402 because "it is a relevant and inseparable part of the act which is in issue. . . .  [I]t is necessary to admit the evidence to adequately describe the deed."  Charles W. Ehrhardt, FLORIDA EVIDENCE § 404.17 (1993 ed.); *see Gorham v. State*, 454 So. 2d 556, 558 (Fla.1984), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 941, 83 L.Ed.2d 953 (1985); *Erickson v. State*, 565 So. 2d 328, 332-33 (Fla. 4th DCA 1990), *review denied*, 576 So. 2d 286 (Fla.1991); *Tumulty v. State*, 489 So. 2d 150, 153 (Fla. 4th DCA), *review denied*, 496 So.2d 144 (Fla.1986).

<u>Griffin v. State</u>, 639 So. 2d 966, 968 (Fla. 1994), *cert. denied*, 514 U.S. 1005 (1995).

Consequently, neither attorney error nor prejudice to the outcome has been shown.  Ground three is without merit.

**Ground Four**

Petitioner contends that his attorney was ineffective for insisting that he not testify on his own behalf.  He asserts that counsel misadvised him as to the consequences of Petitioner's prior criminal record should he testify.  He alleges that had he testified, "he would have rebutted the State's arguments and demonstrated his innocence."  Doc. 1, p. 6.  Respondent concedes exhaustion of state court remedies as to this claim.

"[A] criminal defendant has a *fundamental* constitutional right to testify in his or her own behalf at trial.  This right is personal to the defendant and cannot be waived

---

[7] <u>Williams v. State</u>, 110 So. 2d 654, 662 (Fla.), *cert. denied*, 361 U.S. 847 (1959).

either by the trial court or by defense counsel."  United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc, emphasis by the court).  "[T]he appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."  953 F.2d at 1534.

To prevail, Petitioner must also show that the outcome was prejudiced.  Nichols v. Butler, 953 F.2d 1550, 1553-1554 (11th Cir. 1992) (en banc).  "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated."  United States v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984) (citations omitted).   Apart from circumstances of such a magnitude that prejudice is presumed, "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."  Cronic, 466 U.S. at 659, n. 26, 104 S.Ct. at 2047, n. 26, citing Strickland, 466 U.S. at 693-696, 104 S.Ct. at 2067-2069 (other citations omitted).

In denying this claim, the state circuit court held:

The Defendant's ground 2 alleges counsel was ineffective for advising him that if he testified at trial, the State would be able to reveal his prior felony offenses.  Defendant claims he relied on counsel's advice in deciding not to testify and was thus prejudiced.  If counsel advised Defendant that jurors "may" hear facts and the nature of all prior offenses and that his prior offenses "may" come out if he elects to testify, this is not misadvice by counsel.  See Brown v. State, 756 So.  2d 230 (Fla. 3d DCA 2000). The nature of the crimes are admissible as to whether the crimes are convictions for felonies or a crime involving dishonesty.  Review of the

Defendant's criminal history shows he had an unusually high number of felonies admissible as impeachment.  The sentencing scoresheet lists no fewer than 10 felonies.  The various misdemeanors number 35.  The printout history attached shows many of these involve crimes of dishonesty.  (See Attached Scoresheet & CJIS Printout).  Further, if the Defendant did testify and could not remember or did not remember or did not admit to the correct number of convictions, then the State could go down the rapsheet to refresh Defendant's memory.  *See Fotopoulos v. State*, 608 So. 2d 784 (Fla. 1992).  Finally, with this unusually high number of felonies, the specifics of the crimes are immaterial.  Ironically, even had Defendant been accurate as to the number of felonies admissible, had Defendant testified, the strategy would likely require the Defendant to reveal the exact nature of the convictions so that the jury would not speculate as to whether they were serious, violent crimes, and to reveal all pleas given under the theory that Defendant was willing to be responsible for property crimes he actually committed.  Accordingly, the Defendant fails to show any misadvice by counsel as to the risk of taking the stand which reasonably resulted in any prejudicial impact on this case.

Doc. 8, Ex. O, R. 119.

The finding that Petitioner had 10 prior felonies and 35 misdemeanors is supported by the sentencing scoresheet.  *Id.*, R. 149.  Further, the conclusion that counsel's advice, that the nature of the prior offenses might be revealed if Petitioner testified, is legally correct under Florida law.  Although cross examination is initially limited to the existence and number of prior convictions, the scope of the inquiry into the nature of the prior convictions may quickly expand depending upon the testimony elicited from the defendant:

Unless the witness answers untruthfully, this inquiry is generally restricted to the existence of prior convictions and the number of convictions.  Fulton v. State, 335 So. 2d 280 (Fla.1976); *McArthur v. Cook*, 99 So. 2d 565 (Fla.1957); *Leonard v. State*, 386 So. 2d 51, 52 (Fla. 2d DCA 1980).  However, when a defendant attempts to mislead or delude the jury about his prior convictions, the State is entitled to further question the defendant concerning the convictions in order to negate any false impression given.  *See Leonard*, 386 So. 2d at 52; *Dodson v. State*, 356 So. 2d 878 (Fla. 3d DCA), *cert. denied*, 360 So. 2d 1248 (Fla.1978); *cf. McCrae v. State*, 395 So. 2d 1145, 1151 (Fla.1980) (although the scope of cross-examination

generally should be no broader than the scope of direct examination, state was entitled to question defendant regarding the nature of prior felony conviction in order to negate the delusive innuendoes of his counsel), *cert. denied*, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981); *Hernandez v. State,* 569 So. 2d 857 (Fla. 2d DCA 1990) (defendant who volunteered statements on cross-examination that he had never been involved in a drug-related deal opened the door to questioning about a heroin deal he had arranged two days prior to the instant offense).

Fotopoulos v. State, 608 So. 2d 784, 791 (Fla. 1992), *cert. denied*, 508 U.S. 924 (1993). It was not legal error for Petitioner's counsel to advise him of the danger of testifying, given Petitioner's very lengthy criminal history.

Moreover, the claim as alleged in this court is insufficient.  Petitioner does not explain in detail what his testimony would have been.  He simply states that he would have demonstrated his innocence.  A conclusory assertion that counsel did not allow a defendant to testify, without particular factual allegations as to prejudice to the outcome, is insufficient.  Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991); Siciliano v. Rose, 834 F.2d 29, 30-31 (1st Cir. 1987).  For these reasons, Petitioner has not shown that the state court's adjudication of the merits of this federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by  by James H. Robinson, doc. 1, challenging his convictions for burglary of a dwelling (count one), dealing in stolen property (count two), grand theft (count three), resisting arrest without violence (count four), trespass to an occupied

structure (count five), and possession of drug paraphernalia (count six), in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 01-751-AF, be **DENIED WITH PREJUDICE**.

      **IN CHAMBERS** at Tallahassee, Florida, on June 8, 2006.


          **s/    William C. Sherrill, Jr.**
          **WILLIAM C. SHERRILL, JR.**
          **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

      **A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**